<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

Filed / Docketed
October 29, 2009

| | |
|---|---|
| IN RE: | |
| COAST, LARRY DEAN and<br>COAST, MARIAN JOYCE, | Case No. 09-11664-R<br>Chapter 7 |
| Debtors. | |
| DERRILL MEYER and<br>KAREN MARIE MEYER, | |
| Plaintiffs, | Adv. No. 09-01091-R |
| v. | |
| LARRY DEAN COAST and<br>MARIAN JOYCE COAST, | |
| Defendants. | |

<u>ORDER DENYING AMENDED MOTION TO DISMISS
AND GRANTING LEAVE TO FILE AN AMENDED COMPLAINT</u>

Before the Court is the Amended Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 9) (the "Motion to Dismiss") filed on October 12, 2009, by Debtors/Defendants Larry Dean Coast and Marian Joyce Coast ("Debtors"), and the Plaintiffs' Response to Amended Motion to Dismiss Complaint (Doc. 10) filed on October 20, 2009, by Plaintiffs Derrill Meyer and Karen Marie Meyer (the "Meyers").

**Jurisdiction**

The Court has jurisdiction of this core proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(I); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**Standard of review**

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Bankruptcy Rule 7012(b)),

> a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.

Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937 (2009).

**Contentions of the parties**

On September 6, 2009, the Meyers filed a Complaint (Doc. 1) requesting that the Court except the debt owed by the Debtors to the Meyers from discharge, alleging that the debt arises from fraud or defalcation committed by the Debtors while acting in a fiduciary capacity. See 11 U.S.C. § 523(a)(4). In their Motion to Dismiss, the Debtors contend that the Complaint does not allege facts that establish that the Debtors owed any fiduciary duties to the Meyers because their claim arises from the Meyers' construction and sale contract with a non-debtor entity, Coast Signature Homes, LLC. ("CSH"), and the debt sought to be excepted from discharge resulted from CSH's (and not the Debtors') non-payment of its subcontractors and materialmen.

**Discussion**

In their Complaint, the Meyers allege the following operative facts, which at this stage the Court must assume are true:

On or about May 1, 2008, the Meyers entered into a contract with CSH in which CSH agreed to complete construction on and sell a residence to the Meyers (the "Contract"). Complaint at ¶ 4. Both of the Debtors are managers of CSH. Id. The Meyers paid CSH an escrow deposit in the amount of $5,000.00. Id.

At closing of the sale of the residence on July 9, 2008, Marian Coast, as manager of CSH, executed a warranty deed and a sworn statement that there were no claims against the residence.[1] Id. at ¶ 5. Marian Coast[2] "left closing with $54,636.67."[3] Id.

On February 17, 2009, Mill Creek Lumber & Supply Company and Mill Creek Carpet & Tile Company (collectively, "Mill Creek") filed a petition to foreclose a mechanic's or materialmen's lien against the Meyers' residence, which had been filed to secure payment of $41,615.79 plus interest, costs and fees. Id. at ¶ 6.

The Meyers allege that the Debtors owe them a debt that arose from defalcation and/or fraud while acting in a fiduciary capacity, citing Sections 152 and 153 of Title 42 of the Oklahoma Statutes. These statutes establish that funds paid to a building or remodeling contractor are held in trust for the payment of lienable claims asserted by providers of labor

---

[1] The Court assumes that the Meyers paid CSH the full purchase price for the residence at closing.

[2] It is unclear from the Complaint whether Marian Coast received the funds personally or on behalf of CSH.

[3] The Court assumes that the remainder of the proceeds were applied to pay closing costs and mortgages, claims and encumbrances against the residence.

and materials to the property. The Meyers request that their claim against the Debtors, as well as Mill Creek's claim against the Debtors,[4] be excepted from discharge.

Sections 152 and 153 of Title 42 of the Oklahoma Statutes, known as the Oklahoma Construction Trust Fund Statutes, establish a statutory trust over funds paid by a property owner to a construction or remodeling contractor, and over proceeds paid to a seller of real property, to the extent there are lienable claims outstanding (*i.e.*, claims for which a subcontractor or materialman is legally entitled to assert a lien against property to secure payment for labor or materials). The trust inures to the benefit of the property owner as well as to those who have supplied materials or labor in connection with the construction or remodeling. See In re Harris, 2002 OK 35, 49 P.3d 710, 716.

Section 152 provides in pertinent part—

(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract.

*****

(3) The amount received by any vendor of real property under a warranty deed shall, upon receipt by vendor, be held as trust funds for the payment of all valid lienable claims due and owing or to become due and owing by such vendor or his predecessors in title by reason of any improvements made upon such property within four (4) months prior to the delivery of said deed.

42 O.S. § 152(1) and (3). Section 153 of Title 42 provides—

---

[4] Although not raised by the Debtors in their Motion to Dismiss, and therefore not addressed by the Meyers in their response, the Court notes that the Complaint does not establish that the Meyers have standing to assert the rights of Mill Creek or to adjudicate the dischargeability of Mill Creek's claim. See Coleman v. Miller (In re Miller), 270 B.R. 303, 305 (D. Kan 2001) ("the only party that has standing to challenge the dischargeability of a debt is the party to whom the debt is owed").

4

>   (1) The trust funds created under Section 152 of this title shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid.
>
>   (2) If the party receiving any money under Section 152 of this title is an entity having the characteristics of limited liability pursuant to law, such entity and the natural persons having the legally enforceable duty for the management of the entity shall be liable for the proper application of such trust funds and subject to punishment under Section 1451 of Title 21 of the Oklahoma Statutes.  For purposes of this section, the natural persons subject to punishment shall be the managing officers of a corporation and the managers of a limited liability company.
>
>   (3) The existence of such trust funds shall not prohibit the filing or enforcement of a labor, mechanic or materialmen's lien against the affected real property by any lien claimant, nor shall the filing of such a lien release the holder of such funds from the obligations created under this section or Section 152 of this title.

42 O.S. § 153.

"Oklahoma law is clear that the statutory duty imposed on a general contractor to hold funds in trust for the payment of subcontractors creates a fiduciary relationship between the owner and the contractor." Murphy Oil USA v. Wood, 438 F.3d 1008, 1017 (10th Cir. 2006); see also Harris, 49 P.3d at 716.  "It is also well settled that the owner of real property who places trust funds with a general contractor pursuant to the Oklahoma construction trust fund statutes is a beneficiary of the statutory construction lien scheme to the extent of any valid lienable claims arising from the contract between the owner and the contractor." Id.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  The Meyers do not allege embezzlement or larceny; rather they allege that the debt arose from the Debtors' fraud or defalcation while acting in a fiduciary capacity.  As

5

stated above, the Tenth Circuit Court of Appeals and the Oklahoma Supreme Court have both held that the Oklahoma Construction Trust Fund Statutes establish a statutory trust in which the contractor or seller of real property who is paid by a property owner must hold the funds in trust until all lienable claims are paid. Contractors and sellers who have handled funds subject to the Oklahoma Construction Trust Fund Statutes are fiduciaries within the purview of Section 523(a)(4). See Spectrum Paint Co. v. Chambers (In re Chambers), 226 B.R. 915, 921 n.8 (Bankr. N.D. Okla. 1998); see also Duncan v. Neal (In re Neal), No. WO-05-029, 2006 WL 452340, at *5 (B.A.P. 10th Cir. Feb. 22, 2006). A "defalcation" under Section 523(a)(4) occurs when "a fiduciary-debtor fail[s] to account for funds that have been entrusted to it due to any breach of fiduciary duty, whether intentional, wilful, reckless, or negligent." Antlers Roof-Truss & Builders Supply v. Storie (In re Storie), 216 B.R. 283, 288 (B.A.P. 10th Cir. 1997).

The Meyers have alleged that the Debtors were managers of CSH, which would, if true, establish that the Debtors would be personally liable for any misapplication of trust funds received by CSH. See 42 O.S. § 153(2). Further, the Meyers have alleged that the Debtors, as managers of CSH, were entrusted with funds (the escrow deposit and the sale proceeds) in connection with the construction and sale of the residence, as envisioned by Section 152(1) and (3), and therefore have adequately pled facts to establish that the Debtors had fiduciary duties to the Meyers under Section 153–specifically the duty to apply the deposit and proceeds "to the payment of said valid lienable claims and no portion thereof . . . for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid." 42 O.S. § 153(1).

6

Although the Meyers allege that Mill Creek has filed an action to foreclose a lien against the residence, they fail to plead any facts to establish that Mills Creek's lien is due to CSH's or the Debtors' failure to pay Mill Creek for work performed under the Contract or for materials provided for CSH's performance of the Contract (see 42 O.S. §152(1)).  Nor do the Meyers allege that Mill Creek's lien arose due to the Debtors' non-payment for "improvements made upon such property within four (4) months prior to [CSH's] delivery of the deed" (see 42 O.S. § 152(3)).

In their response to the Motion to Dismiss, the Meyers argue that Mill Creek's lien resulted from the Debtors' failure to pay Mill Creek for labor and materials provided in constructing the residence, but such an allegation is not contained in the Complaint.  The Complaint fails to allege a factual basis to support all elements of a claim against the Debtors for defalcation while acting in a fiduciary capacity, but it appears that the Meyers may be able to amend the Complaint to state a claim.

**Conclusion**

In the interests of efficiency and justice, the Court conditionally denies the Motion to Dismiss and grants the Meyers leave to file an amended complaint within fourteen (14) days to remedy the deficiencies stated herein.  If an amended complaint is not timely filed, however, the Motion to Dismiss will be granted by a separate judgment.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE